USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8-17-17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

SHLOMO KUBITSHUK, *et al.*,

Defendants.

16-cr-711 (KMW)

**OPINION & ORDER**

KIMBA M. WOOD, District Judge:

Defendants Shlomo Kubitshuk, Rachel Kubitshuk, Naftali Englander, and Hinda Englander have submitted a Joint Omnibus Motion: a Motion to Dismiss Counts Three to Seven of the Indictment to the extent that they apply to conduct pre-dating the limitations period, and for improper venue, and a Motion for a Bill of Particulars. For the following reasons, the Court DENIES Defendants' Joint Omnibus Motion.

On October 25, 2016, Defendants were charged with stealing government funds from three federal benefits programs for low-income individuals, by making false declarations to obtain federal healthcare benefits, food stamps, and housing subsidies. Counts Three and Five charge the Englanders and Kubitshuks with fraudulently obtaining federal housing subsidies from July 2001 through March 2016 and from November 2002 through August 2012, respectively. Counts Four and Seven charge the Englanders and Kubitshuks with fraudulently obtaining Medicaid benefits from May 2001 through May 2016 and from April 2003 through February 2015, respectively. Count Six charges the Englanders with fraudulently obtaining SNAP benefits from March 2003 through July 2015.

A Government investigation revealed that Defendants allegedly received these benefits by making false declarations to the New York Human Resources Administration (NYHRA) and the

New York City Housing Authority (NYCHA). Defendants purportedly failed to disclose the hundreds of thousands of dollars in annual rent they derived from their ownership of various real estate properties in the United States and England.

All four defendants pleaded not guilty on November 2, 2016, before this Court.

I. **STATUTE OF LIMITATIONS**

The Indictment, filed in 2016, charges both conduct within the five year statute of limitations, and conduct that pre-dates the limitations period. 18 U.S.C. § 3282(a). Defendants move to dismiss the Indictment for all crimes committed before October 25, 2011, or five years before the Indictment was filed. Defendants argue that their crimes were not "continuous," and thus charges relating to conduct before October 25, 2011 should be dismissed as time-barred.

The dispositive question is whether or not Section 641, which criminalizes the theft of government benefits, should be interpreted as stating a "continuing offense"—"one that involves a prolonged course of conduct," thus tolling the statute of limitations on the offense until its commission is complete and "the conduct has run its course." *United States v. Rivera-Ventura*, 72 F.3d 277, 281 (2d Cir. 1995). If Section 641 is not considered a continuing offense, then the charges for conduct before October 25, 2011, must be dismissed as time-barred.

A. Legal Standard: *Toussie*

In *Toussie v. United States*, the Supreme Court held that a crime would be considered continuing when: (1) "the explicit language of the substantive criminal statute compels such a conclusion," or (2) "the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one." 397 U.S. 112, 115 (1970).

The "hallmark of the continuing offense is that it perdures beyond the initial illegal act, and that 'each day brings a renewed threat of the evil Congress sought to prevent even after the elements

2

necessary to establish the crime have occurred.'" *United States v. Yashar,* 166 F.3d 873, 875 (7th Cir.1999) (quoting *Toussie,* 397 U.S. at 122). Classic examples of continuing crimes include conspiracy, kidnapping, escape, and possession crimes. *United States v. Hoey,* 2016 WL 270871, at *11 (S.D.N.Y. Jan. 21, 2016) (Engelmayer, J.).

    B. The Fourth Circuit's Decision in *Smith* and the District Court's Decision in *Rivlin*

Whether or not Section 641 is a continuing offense is an issue the Second Circuit has *not* decided, and as to which district courts have reached different conclusions. The Fourth Circuit is the only appellate court to have addressed this issue, in *United States v. Smith,* 373 F.3d 561 (4th Cir. 2004). In *Smith,* the Defendant failed to report his mother's death to the Social Security Administration. Smith received and cashed his mother's Social Security benefits each month for four years, in violation of Section 641. The court held that Congress must have intended the type of case in which a defendant created a recurring, automatic scheme of embezzlement to be a continuing offense. The court also stated that "the particular kind of embezzlement that occurred **in this case** is correctly considered, under *Toussie,* to be a continuing offense." *Id.* at 568 (emphasis added). The Court noted, in dictum, that different types of embezzlement might constitute a series of acts that should not be characterized as continuing offenses.

The Fourth Circuit, in *Smith,* focused on whether the *defendant's actions* were continuous. By contrast, Judge Stein, in *United States v. Rivlin,* 2007 WL 4276712 (S.D.N.Y. Dec. 5, 2007), focused on the wording of the *statute.* ("[T]he particular course of conduct giving rise to the offense is not relevant under *Toussie* to a determination of whether Congress 'would assuredly have intended' that a crime be deemed a continuing offense." *Rivlin,* 2007 WL 4276712, at *5.).

3

C. The Element of Retention

This Court concludes that Congress intended for Section 641 to apply to "continuous" conduct that pre-dates the limitations period, where the charged conduct involves retention of embezzled funds. *Rivlin*, 2007 WL 4276712, at *4. The *Rivlin* court noted that Section 641 "criminalizes not only the embezzlement of public funds, but also ... the [knowing] retention of such funds." *Id.* (emphasis in original). The court continued,

> It is the retaining of stolen government property—a crime of possession—that can render a violation of section 641 a continuing offense. The crime of possessing stolen funds does not end at the moment the funds are unlawfully obtained, but rather continues up until the possession ends; only at that point does the statute of limitations begin to run.

*Id.* (internal citations omitted); *see also United States v. Tackett*, 2011 WL 4005347, at *5 (E.D. Ky. Sept. 8, 2011) (Because the crime of retention continues until the possession of the stolen funds ends, "Congress must have intended retention to be treated as a continuing offense.")

In Counts Three, Four, Five, Six, and Seven, the Indictment plainly charges Defendants with retaining the stolen government funds:

> the defendants, willfully and knowingly did embezzle, steal, purloin, and convert to their use and the use of another, vouchers, money and things of value of the United States and a department and an agency thereof, ... and did receive, conceal, and **retain** the same with intent to convert it to his use and gain, knowing it to have been embezzled, stolen, purloined and converted....

*See* Indictment (emphasis added). The Court finds that these Counts charge continuing offenses under Section 641.

D. Active or Passive Offenses

Defendants contend that the active nature of their scheme renders their conduct non-continuing. The difference between Defendants and *Smith*, they argue, is that the Kubitshuks and Englanders had to recertify their financial statuses each year in order to keep receiving benefits.

4

Defendants argue that their conduct did not constitute a "recurring, automatic scheme of embezzlement," unlike Smith, who continued to receive SSA payments each month, without any recertification. *Smith*, 373 F.3d at 587. Smith's automatic receipt of benefits was passive, while the Defendants' recertification each year, they argue, was active and was *not* an "automatic scheme."

The Court disagrees, because"[i]t is not the active or passive nature of a defendant's actions that matters, but rather whether the statute describes an offense that by its nature continues after the elements have been met." *United States v. Motz*, 652 F. Supp. 2d 284, 294 (E.D.N.Y. 2009) (quoting *Rivlin*, 2007 WL 4276712, at *3). As discussed *supra*, the retention of stolen federal funds under Section 641 renders the crime continuing, irrespective of whether or not the specific conduct can be categorized as active or passive.

In sum, the Court DENIES the Motion to Dismiss the Indictment for any conduct pre-dating the limitations period.

## II. VENUE

Defendants argue that venue in the Southern District of New York is improper for Counts Three through Seven. Because Defendants lived in Brooklyn for the entire duration of the charged conduct (2001–2016), and because they applied for benefits from their residences in Brooklyn and mailed the program applications and income re-certifications to Brooklyn addresses, Defendants argue that the charged offenses were committed entirely in the Eastern District, which they submit is the proper venue. Defendants also maintain that all communications the Kubitshuks and Englanders had with the NYCHA were with offices in Brooklyn, and that the applications were stamped as having been received in a Brooklyn office. The Englanders received a letter from NYCHA requesting employment verification, sent from a Long Island City address, which is also in the Eastern District. Defendants claim they mailed Medicaid applications to a Brooklyn office, as well.

5

The Southern District is not an improper venue to try this action, and this partial Motion to Dismiss is DENIED, for the following reasons.

A. Venue in Continuing Offense Cases

For a continuing offense, venue is proper "in any district in which the offense began, continued, or concluded," *United States v. Kim*, 246 F.3d 186, 191 (2d Cir. 2001), and when "(1) the defendant intentionally or knowingly causes an act in furtherance of the charged offense to occur in the district of venue or (2) it is foreseeable that such an act would occur in the district of venue." *United States v. Svoboda*, 347 F.3d 471, 483 (2d Cir. 2003). The defendant need not be physically present in a venue, as long as an overt act in furtherance of the conspiracy occurred in that venue. *United States v. Geibel*, 369 F.3d 682, 696 (2d Cir. 2004).

The Indictment alleges that Defendants' offenses occurred "in the Southern District of New York and elsewhere." Generally, this would be sufficient to overcome a motion to dismiss, because the Court considers an indictment's allegations as true. *See, e.g., United States v. Goldberg*, 756 F.2d 949, 950 (2d Cir. 1985); *United States v. Wey*, 2017 WL 237651, at *5 (S.D.N.Y. Jan. 18, 2017) (Nathan, J.). The Government still bears the burden of proving at trial, by a preponderance of the evidence, that the crime was committed in the Southern District. If the Government is unable to sustain this burden, Defendants may then renew the motion under Rule 29 of the Federal Rules of Criminal Procedure.

B. Wiring Benefits from Manhattan

Defendants, however, take issue with the "boilerplate" venue language alleged in the Indictment, arguing that it is undisputed that Defendants lived in Brooklyn, and that all relevant conduct took place in Brooklyn. However, Defendants fail to account for the fact that the benefits they received were wired from the NYCHA and NYHRA offices in Manhattan.

The Second Circuit's *Rutigliano* decision guides the Court's decision here. The *Rutigliano* defendants argued that they had never physically been in the Southern District of New York in furtherance of their scheme to fraudulently obtain disability pensions from the Long Island Rail Road. The Second Circuit found venue appropriate because "the government proved that unlawfully obtained disability benefits, wired to participants in the scheme, traveled through or over waters within the Eastern District, which are statutorily defined to also be part of the Southern District." *United States v. Rutigliano*, 790 F.3d 389, 397 (2d Cir. 2015).

"[A] scheme to defraud is not complete until the proceeds have been received," and thus Defendants' receipt of the wired benefits from NYCHA and NYHRA in Manhattan renders venue in the Southern District proper. *Id.*

Although the *Rutigliano* decision did not address foreseeability, this Court finds it reasonably foreseeable to Defendants that the government agencies administering the benefits are headquartered in Manhattan, despite having Brooklyn field offices, and that it was reasonably foreseeable that benefits payments made by wire transfer originated in Manhattan.[1]

C. Lack of Prejudice to Defendants

Finally, to determine whether the chosen venue for trial is prejudicial to the defendant, a district court: (1) determines whether an offense was continuing, and committed in more than one district, and (2) asks "whether the criminal activities in question bear 'substantial contacts' to the Southern District of New York in order to ensure that the policies and considerations underlying the Constitution's commands respecting venue have been preserved." *United States v. Saavedra*, 223

---

[1] Naftali Englander and Shlomo Kubitshuk were Section 8 landlords who received payments from NYCHA's Manhattan office, during this time, making it even more foreseeable that the benefit payments at issue in this action would be wired from Manhattan. (Gov't Opp'n at 17.)

7

F.3d 85, 89 (2d Cir. 2000). The "substantial contacts" test has four factors: "(1) the site of the crime, (2) its elements and nature, (3) the place where the effect of the criminal conduct occurs, and (4) suitability of the venue chosen for accurate factfinding." *Id.* at 93 (citing *Reed*, 773 F.2d at 480).

Following *Rutigliano*, the Court finds that Defendants have failed to demonstrate that they would be prejudiced if the case is tried in this District.

The Court DENIES the Motion to Dismiss for improper venue.

## III. BILL OF PARTICULARS

Finally, Defendants request a bill of particulars addressing: (1) the income or assets the Defendants allegedly earned or owned each year, and (2) the eligibility requirements for each benefit program.

Defendants are entitled to a bill of particulars only if the information sought is *necessary*, not just *helpful*, to their case. *United States v. Minaya*, 2012 WL 1711569, at *1 (S.D.N.Y. May 14, 2012) (Keenan, J.). This enables a defendant to supplement the allegations to prepare their defense, to avoid surprise at trial, and to preclude another prosecution of the same offense. *United States v. Mandell*, 710 F. Supp. 2d 368, 384 (S.D.N.Y. 2010) (Crotty, J.). If the information sought is already provided in the indictment or in discovery, a bill of particulars is not required. The Government is not obliged to give the defendant a preview of its case before trial. *United States v. Facciolo*, 753 F. Supp. 449, 451 (S.D.N.Y. 1990) (Edelstein, J.).

The Government has provided Defendants with ample, particularized discovery; anything further would compel the Government to provide the details of its case. The Government has produced, for example, the eligibility charts that the Government has in its possession, and the detailed allegations in the Complaint, listing specific evidence that supported those allegations. Defendants' sweeping request that the Government locate and provide all of the NYCHA and

8

NYHRA agencies' manuals, program handbooks, and applicable regulations and methodologies is not appropriate in a bill of particulars. *See United States v. Ghavami*, 2012 WL 2878126, at *4 (S.D.N.Y. July 13, 2012) (Wood, J.).

Accordingly, the Defendants' Motion for a bill of particulars is DENIED.

IV. **CONCLUSION**

For the foregoing reasons, the Court DENIES Defendants' Joint Omnibus Motion. This resolves Docket No. 49.

SO ORDERED.

Dated: New York, New York
August 17, 2017

*/s/ Kimba M. Wood*
THE HON. KIMBA M. WOOD
United States District Judge